Edward L. Alber, appellee, v. City of Dubuque, appellant.

No. 49880.

(Reported in 101 N.W.2d 185)

FEBRUARY 9, 1960.

T. H. Nelson, of Dubuque, for appellant.

O'Connor, Thomas, McDermott & Wright, of Dubuque, for appellee.

PETERSON, J.—Plaintiff has resided for several years at 1449 Locust Street, Dubuque, in an apartment house he is buying on contract. His property extends through the block to Bluff Street on the west. In September of 1951 he replaced the old brick sidewalk abutting the north half of his lot on Bluff Street with a new concrete walk. He built another garage at the same time. He secured a building permit for his garage and a sidewalk permit for the sidewalk. His contractor was Mr. Henry Kramer, Sr., and when he was ready to build the sidewalk plaintiff testified Mr. Vincent Benda, the city sidewalk inspector, came out and gave Mr. Kramer the grade line on which to build the sidewalk.

The old brick sidewalk was still in place abutting the property immediately to the north of plaintiff. When Mr. Kramer placed the sidewalk on the grade line, as given him by the side-

walk inspector, the north end of the new sidewalk was about two and a quarter inches above the brick sidewalk at the center line of the walk.

On October 24, 1956, at about eight o'clock in the evening, plaintiff walked down to a neighborhood tavern to look at the television. He drank two bottles of orange pop. Later in the evening a friend by the name of Mr. Lawrence Nutz came into the tavern. He had his car and offered to take plaintiff home. Plaintiff stopped in at a grocery store and bought a loaf of bread and told his friend they would have a roast beef sandwich when they arrived at his house. Mr. Nutz drove his car up Bluff Street to the west side of plaintiff's property and drove into his driveway.

When plaintiff alighted from his friend's car he noticed a rather large piece of white paper on the west side of the brick sidewalk about ten feet north of his sidewalk. He walked up and picked it up. He then proceeded to walk back on the center of the brick sidewalk with the loaf of bread under one arm and the piece of paper, which he was going to throw into a waste-paper basket, in his other hand. When he reached the north edge of his concrete walk, where it was two and a quarter inches above the brick walk, he stubbed his right foot and fell. He struck his head on the walk; was knocked unconscious, and fractured the femur of his right leg.

The bills of the hospital and doctor amounted to $1124.90. In his petition he also claimed damages for pain and suffering and permanent injury. The jury returned a verdict in his favor for $15,000. City of Dubuque has appealed.

Appellant assigns four alleged errors. 1. The court should have directed a verdict on the basis of plaintiff's contributory negligence as a matter of law. 2. The court should have directed a verdict on the basis that plaintiff failed to establish actionable negligence as against defendant. 3. The case should be reversed because the trial court erred in ruling that all taxpayers of the City of Dubuque were ineligible as jurors. 4. The court erred, and the case should be reversed, in admitting Exhibits 14, 19, 20 and 22 over defendant's objections. These were four subpoenas duces tecum directed to city officials and demanding production in court of certain city records.

The statutory basis for claims against cities and towns for defective streets is section 389.12 of the Code, which is as follows: "They shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances."

The statute in substantially the same form has been in effect for one hundred years. It appeared first in the Code of 1860. Almost every type of sidewalk defect has, therefore, had consideration, although each case still depends upon the peculiar facts and circumstances of the particular case.

█ I. In almost all cases the question of contributory negligence has been raised. The instant case is very close as to this question. When plaintiff built his concrete sidewalk in 1951 he became cognizant of the fact that the brick sidewalk to the north was about two and a quarter inches lower than his sidewalk. Over five years had passed when the accident happened. He claims he had only been out on the walk on Bluff Street twice during that period. This sounds a little incredulous, but as to whether or not he was to be believed was a question for the jury. We realize this could be possible because his apartment house where he lived was on Locust Street and in walking in or out of his apartment he would normally go out the front way. Otherwise, he would drive his car, which was in the garage abutting Bluff Street. In doing so he would cross his own sidewalk and ordinarily would only see his garage and his sidewalk.

Plaintiff's testimony as to what happened on the night of his injury is as follows: "I got as far as the walk where the brick sidewalk comes together with the cement and I stubbed my right foot on there and I hit. That is the last I remember. * * * I came to in my basement on my bed." He further testified: "I could see the area where the brick sidewalk joined the cement sidewalk, but not too well, it was rather dark. I made an effort to step over this difference in elevation and I didn't step high enough because I was walking natural. It was dark at that time. Q. State whether or not the darkness caused you to misjudge this difference in elevation at the time you stepped over it? A. Yes sir."

It is necessary to analyze some of the leading decisions, where the question of contributory negligence in connection with injuries resulting from sidewalk defects has been considered.

One of the early cases, decided in 1902, was Rusch v. City of Dubuque, 116 Iowa 402, 403, 90 N.W. 80, 81. Plaintiff was walking along the sidewalk on one of the principal streets of Dubuque. She caught her foot on a spike protruding from a sidewalk plank, to the extent of one and a half to two inches, and fell. She had been over the walk several times prior to her fall, but testified she had taken no notice of its condition. She was not observing the walk at the time of the injury, but she "walked as usual and looked ahead."

The principal contention of the city was that in failing to observe the projecting spike she was guilty of contributory negligence and ought not, for that reason, to recover. The court said: "All required of plaintiff was that she exercise the care an ordinarily prudent person would in passing over the walk. * * * While bound to make use of their senses and exercise the caution ordinarily displayed by persons of prudence, they are not required at their peril to discover every defect, even though open and visible. Barnes v. Town of Marcus, 96 Iowa 675 [65 N.W. 984]; Baxter v. City of Cedar Rapids, 103 Iowa 599 [72 N.W. 790]. * * * whether, in failing to observe them [the spike], she was negligent, was properly left to the jury."

In Howard v. City of Waterloo, 206 Iowa 1109, 1114, 221 N.W. 812, 814, plaintiff was walking along a public street when she caught her foot in a protrusion of cement and was thrown to the cement sidewalk; a three-cornered piece stuck up two inches and she caught her toe on this protrusion when she took a step. Before she could get loose it had wrenched her ankle. The question was whether plaintiff was guilty of contributory negligence as a matter of law. She testified she did not see the depression in the walk, nor the protruding slab that tripped her; that she was walking with care and had plenty of time; was walking slowly, just about as she would anywhere else in town, paying attention to her surroundings and talking with those with whom she was in company. The court said: "It cannot be said, as a matter of law, that the pedestrian is bound to keep his eyes glued to the walk on which he travels, or that he assumes the

risk of every defect which close inspection of every footstep may reveal. His duty in the premises is reasonable care and caution * * *." The court held the question of contributory negligence was for the jury.

In Staples v. City of Spencer, 222 Iowa 1241, 1248, 271 N.W. 200, 204, plaintiff was crossing a main street in the city when she stepped into a depression which had been caused by wheel tracks passing over snow and ice. She slipped and fell, breaking her hip. The court said: "* * * no question is raised except as to the sufficiency of the evidence, and the contention that plaintiff failed to show herself free from contributory negligence. We think the question of contributory negligence under the facts disclosed by the evidence was clearly for the jury. * * * The evidence presents a situation where the court may not arbitrarily invade the province of the jury and set aside its verdict * * *."

In Thomas v. Fort Madison, 225 Iowa 822, 828, 281 N.W. 748, 752, plaintiff claimed damages caused by defective condition in the sidewalk. The walk had, originally, been flush with the top of the curb but when the city lowered the curb, the walk was not lowered but remained unchanged. This left a ledge or offset of about three inches from the top of the walk down to the top of the curb. This walk had been left in this unfinished condition ever since the curb had been lowered—more than ten years prior to the accident.

Plaintiff testified that she walked slowly; as she came to the point where the sidewalk connects with the curb she stepped from the sidewalk to the pavement and caught the heel of her shoe in the defective walk and fell. The court said: "* * * this condition was created by the city and never remedied over a period of more than ten years; that there was a crevice sufficient to catch the heel of a shoe and which, under the undisputed evidence, was the cause of plaintiff's fall; * * * that plaintiff was walking slowly and carefully at the time—, we are constrained to hold with the trial court that on the questions raised by this appeal the matters were for the determination of the jury."

In Beach v. City of Des Moines, 238 Iowa 312, 319, 320, 322, 26 N.W.2d 81, 85, some general principles were stated which

pertain to the case at bar. The court said: "It is not whether greater care would have avoided the injury but whether the care used was ordinary care under the circumstances. * * * [The city] argues that [plaintiff] should have shortened or lengthened her stride slightly or varied its direction a trifle. It is easy to look back and say that had she done so she might not have fallen. Such criticism of a slight miscalculation comes with poor grace from one that had permitted this defective sidewalk to remain for two or more years a potential hazard to all who used it. [Plaintiff] was bound to use reasonable, ordinary care. She was not required to use extraordinary care. The fact that she fell is not conclusive proof of contributory negligence."

Quoting from Markle v. Chicago, R. I. & P. Ry. Co., 219 Iowa 301, 308, 257 N.W. 771, 775, the court said: " 'Under the doctrine of contributory negligence, it is not necessary for plaintiff to show that he exercised the highest degree of care, or that the care exercised by him was perfect. He was only required to exercise ordinary care.' * * * A jury might well find that it was the usual conduct of a reasonably prudent and careful person." In this case there was a large hole in the sidewalk which did not reach completely across the sidewalk. Plaintiff walked along what was left but her heel slipped into the hole and she lost her balance and fell. She had previously walked over the sidewalk many times. There had been a directed verdict which was reversed, this court holding by a divided court, that the question of freedom from contributory negligence was for the jury.

In Taylor v. City of Sibley, 238 Iowa 1010, 1016, 29 N.W.2d 251, 254, plaintiff was walking down a ramp erected by the city in connection with its sidewalk system, which slanted on the basis of about one inch to the foot. The streets and sidewalks were icy. Plaintiff testified: " 'I thought by walking with great care that I could use it. I thought I could do it, therefore it was all right.' " The court said: "Under the record it cannot be said that the plaintiff was contributorily negligent, as a matter of law, in walking upon this ramp, even though she observed its uneven, icy, and slippery condition, and knew that it was dangerous * * * if she believed that by the exercise of care she could pass over it safely * * *. This court has uniformly [so] * * * held in many decisions * * * that under the circumstances

and conditions noted above or similar thereto, the issue of plaintiff's freedom from contributory negligence is for the determination of the jury and not for the court."

Other cases as to the same general effect are: Geagley v. City of Bedford, 235 Iowa 555, 16 N.W.2d 252; Smith v. City of Hamburg, 212 Iowa 1022, 237 N.W. 330; Tillotson v. City of Davenport, 232 Iowa 44, 4 N.W.2d 365; Templin v. Incorporated City of Boone, 127 Iowa 91, 102 N.W. 789; Franks v. City of Sioux City, 229 Iowa 1097, 296 N.W. 224.

On the basis of observing the rule that the evidence must be viewed in the light most favorable to plaintiff, and in view of the decisions in the above typical and somewhat similar cases, we hold the question of plaintiff's contributory negligence in the instant case was properly submitted by the trial court to the jury.

II.  The statutory provision with reference to the obligation of cities and towns to care for, supervise and control streets includes the sidewalks. A city is liable to pedestrians who are injured through hazards, entrapments of some type, and substantial defects in sidewalks, subject to the prerequisite that the city has had notice of the defect, actual or constructive. Patterson v. City of Council Bluffs, 91 Iowa 732, 59 N.W. 63; Baxter v. City of Cedar Rapids, supra; Welsh v. City of Des Moines, 170 N.W. 369 (Iowa, N. O. R.); Geer v. City of Des Moines, 183 Iowa 837, 167 N.W. 635; Bailey v. City of Le Mars, 189 Iowa 751, 179 N.W. 73; Rusch v. City of Dubuque, Howard v. City of Waterloo, Beach v. City of Des Moines, and Taylor v. City of Sibley, all supra.

The submission of this case to the jury by the trial court, as to the question of negligence of defendant, was clearly correct. The city sidewalk inspector provided the contractor with a grade, which placed plaintiff's concrete sidewalk $2\frac{1}{4}$ inches above the old brick city walk to the north. The sidewalk inspector, who had responsibility on behalf of the city with reference to the care of sidewalks, permitted this evident hazard to exist. He had actual knowledge of the defect and apparently either did not report the fact to the proper authorities so it could be corrected, or if he did the matter did not have attention. It was a question for the jury as to negligence of city in

leaving the old brick sidewalk lower than the concrete walk for a period of over five years without giving the matter attention. Should the city have ordered in a new concrete walk on the same level as plaintiff's walk, immediately after the erection of plaintiff's concrete walk in 1951? For a period of five years, or until plaintiff had his serious accident, nothing was done by the city. The jury could hold negligence by the city, and the circumstances involved in the situation could form the basis for both actual and constructive notice to the city.

In Thomas v. Fort Madison, supra, the court stated at page 827 of 225 Iowa, page 751 of 281 N.W.: "At the point where a new brick walk joined an old plank walk there was a perpendicular offset of nearly four inches and with reference thereto the court said: 'That such an offset is more or less dangerous is amply demonstrated by the accident to the plaintiff. Whether such an offset is so dangerous as that to permit it is negligence depends upon the surrounding circumstances, such as the proximity of lights, the amount of travel, and the like. We think it was for the jury to determine, in the light of the circumstances, whether the city was negligent in permitting this offset, * * *.' "

In Welsh v. City of Des Moines, supra, we said: "We cannot hold, however, as a matter of law that a municipality may never be charged with negligence, in case of injury, by permitting elevations or depressions of 1½ to 2 inches in sidewalks to remain therein indefinitely after notice, actual or constructive, thereof. The question is one peculiarly for the jury, * * *."

In Howard v. City of Waterloo, supra, at page 1113 of 206 Iowa, this court said: "While the city is not bound to maintain perfection in its sidewalks, it is bound to exercise reasonable care to maintain its walks in a reasonably safe condition. * * * It was for the jury to say whether the officers of the defendant city, with the description of the place, as given by the plaintiff, * * * could reasonably have anticipated an injury to someone who was exercising due care, such as befell the plaintiff."

III. Appellant's counsel raises the question that the court erred in excluding all Dubuque taxpayers as jurors. The regular jury panel subject to the call at the commencement of the trial consisted of 49 persons. It developed that 35 were real

property owners and paid taxes in Dubuque. The court instructed the sheriff to call talesmen. Fifty-eight were called. Thirty-two of the talesmen were Dubuque real property owners. This left 14 prospective jurors in the regular panel and 26 in the talesmen list, or a total of 40. From this group a jury was properly and regularly selected.

Appellant's complaint is that in cross-examination of many of the jurors who were property owners, about 25% said they thought they could fairly try the case even though they were Dubuque taxpayers, and that they should have been permitted to serve.

Throughout the history of the state it has been customary that where a claim for damages is made against a city, property owners in the city are disqualified as jurors. The basis for the disqualification is that they have a vital interest in the outcome of the case. If a judgment is rendered against the city the property owner as a taxpayer will be obligated to pay a part of it. Even though a peculiarly fair-minded juror might state that he would not be prejudiced, yet it is an unfair position in which to place a juror, and the plaintiff in the case. Kendall v. City of Albia, 73 Iowa 241, 34 N.W. 833; Geiger v. Payne, 102 Iowa 581, 69 N.W. 554; Cason v. City of Ottumwa, 102 Iowa 99, 71 N.W. 192; Johnson v. City of Waterloo, 140 Iowa 670, 119 N.W. 70.

Not only is it customary and for the best interest of all parties concerned that jurors under the circumstances above outlined be excused, but the selection of jurors is peculiarly within the discretion of the trial court.

Furthermore, in the case at bar there is no showing as to any prejudice suffered by appellant because the taxpaying jurors were excused.

In Johnson v. City of Waterloo, supra, at page 671 of 140 Iowa, the court said: "The defendant had no right to a trial before any particular juror or jury. All it could insist upon was a competent and impartial jury, and, as the record does not affirmatively show that it exhausted the peremptory challenges to which it was entitled, the jurors before whom the case was tried are presumed to have been acceptable to it." Appellant made no showing in the case at bar that the peremptory chal-

lenges were exhausted after the talesmen had been called. We further stated in the same case (page 672): "* * * though a qualified juror be excused, another equally competent and fair minded will be selected in his stead, and, if a competent and impartial jury is finally secured before whom the cause is tried, neither party is in a situation to complain." This assignment of error by appellant does not justify reversal.

IV. For some reason plaintiff offered in evidence four subpoenas duces tecum which had been served on city officials to appear and bring certain city records. The court admitted them and appellant contends this was error. We are at a loss to see where there was any particular materiality as to these exhibits. We cannot see that they have any bearing upon any issues in the case. On the other hand, there was no prejudice in their admission. The fact that certain city officials were called and were requested to bring certain city records was not in any manner prejudicial to defendant. The fact that the jury had these subpoenas in the jury room was of no importance or consequence as to either party in the case. The admission of the exhibits does not constitute any basis for reversal.

The judgment on the verdict is affirmed.—Affirmed.

All JUSTICES concur.